FARMERS' & MERCHANTS' BANK v. RAY.

Opinion delivered February 1, 1926.

BANKS AND BANKING—LIABILITY FOR NEGLIGENCE IN COLLECTING CHECK.—Under Acts 1921, p. 514, § 14, providing that a bank receiving for collection a check or draft payable in another city or town, and having exercised reasonable care to select a proper correspondent, shall not be liable for the default or negligence of such correspondent, *held* that it was error to instruct that a bank receiving a check for collection "is responsible for the conduct of all other banks employed by it in collecting the check."

Appeal from Crawford Circuit Court; *James Cochran,* Judge; reversed.

*James B. McDonough* and *Starbird & Starbird,* for appellant.

*Warner, Hardin & Warner,* for appellee.

McCULLOCH, C. J.  Appellee, who was the plaintiff below, is a resident of Mulberry, Arkansas, and appellant is engaged in the banking business at that place.

This is an action instituted by appellee against appellant to recover the amount of a check received for collection by appellant, which it failed to account for. The case was tried before a jury, and the trial resulted in a verdict in favor of appellee.

On June 19, 1923, during banking hours, appellee delivered to appellant, for collection, a check for $1,150, drawn in his favor by Mrs. Etta B. Beard on the First National Bank of Sapulpa, Oklahoma. Appellant accepted the check, passed it to the credit of appellee, and gave a deposit slip, and forwarded the check to its corresponding bank in Fort Smith.  This was done in due course of mail on the same day that the check was received, and, according to the due course of mails, the check should have been received by the bank in Fort Smith the next morning, June 20.  The Fort Smith bank forwarded the check to the Federal Reserve Bank at Oklahoma City, where it was received on June 22, 1923, and was by that bank forwarded directly to the First National Bank of Sapulpa for payment.  The check was

received by the Sapulpa bank on June 23, and on that day it drew its own draft on the Federal Reserve Bank at Oklahoma City and forwarded it to the latter in payment of appellee's check. This draft probably reached Oklahoma City on June 24, which was Sunday, but was not delivered on that day, being delivered in due course on Monday, June 25. On that day, and before the Federal Reserve Bank could forward the check, the First National Bank was found to be insolvent, and passed into the hands of the Bank Commissioner for liquidation.

The drawer of the check, Mrs. Beard, lived at Sapulpa, and, when the bank there received the check for payment, Mrs. Beard was informed that the check overdrew her account, whereupon she made a deposit of $500, which was more than sufficient to raise the credits on her account above the amount of the check. Thereupon the bank marked the check "Paid," and surrendered it to Mrs. Beard.

On June 26 appellant received information of the failure of the Sapulpa bank, through its Fort Smith corresponding bank, and at once notified appellee. This was done by the assistant cashier of appellant bank. He testified that he notified appellee that the First National Bank of Sapulpa had closed its doors, that the check was not good, and that they would have to charge it back to him. He testified that he told appellee that they would wait a few days to see whether the check came back. On July 23 the item was charged back against appellee on his account, but he was not notified of the entry until about a month later. In the meantime, appellant, through its cashier, requested appellee to sign a preferred claim to be filed with the Oklahoma Bank Commissioner, but appellee refused to do so. He testified that his refusal was for the reason that appellant demanded that he accept what he received on the claim in full of all demands against the appellant bank.

There was testimony as to the course of the mails between Mulberry and Sapulpa *via* Fort Smith and Ok-

lahoma City. A letter mailed at Mulberry would reach Fort Smith the next morning, and a letter mailed at Fort Smith during the day would leave there early in the evening and reach Oklahoma early the next morning. It was four or five hours by train from Oklahoma City to Sapulpa, there being four trains a day each way. There was no testimony from any one in the Fort Smith bank as to the time the check was received there and mailed out.

The trial court instructed the jury that appellant was liable for its own negligence as well as that of any of the banks through whose hands the check passed for collection, and submitted the issue to the jury as to whether or not there was a failure in collecting the check on account of negligence. Appellant asked the court to instruct the jury that all of the corresponding banks through which the check was transmitted for collection were the agents of appellee, that defendant was liable only for negligence of its own, and was not liable ''for the default or negligence of any of the corresponding banks.'' The court refused to give that instruction, and this is the principal assignment of error in the case.

It is undisputed that the check was delivered to appellant merely for collection, and hence it becomes necessary to determine whether or not the court was correct in its instruction that appellant was liable for any negligence of the corresponding banks through which the check passed.

There are two conflicting lines of decisions—one originating in the New York Court of Appeals (*Allen* v. *Merchants' Bank,* 22 Wend. N. Y. 215), in which it was held that the initial collecting bank is responsible for the negligence of all the corresponding banks through whose hands the check may pass for collection, unless there is an express contract to the contrary between the customer and the initial bank; and the other rule originating in the Supreme Judicial Court of Massachusetts (*Fabens* v. *Mercantile Bank,* 23 Pick. (Mass.) 330), to the effect that where a check on a bank at a distant point

is delivered to the initial bank for collection, the corresponding banks are the agents of the customer, and the initial bank is not responsible for their negligence.    3 R. C. L. p. 622; Morse on Banks, § 274 *et seq.*   The Massachusetts rule seems to find rather greater support in the other authorities, but this court has already committed itself to the New York rule, and we are not disposed to change by overruling former cases. *Second National Bank* v. *Bank of Alma,* 99 Ark. 386; *Perry State Bank* v. *Myers,* 159 Ark. 253.   In *Perry State Bank* v. *Myers, supra,* we said: "The law requires a bank to use due diligence in collecting checks deposited with it for collection.   What due diligence is depends on the particular circumstances in each case.   *   *   *   The negligence of the corresponding bank was necessarily the negligence of the sending bank.   It had selected the corresponding bank as its agent for the collection of the check." In *Second National Bank* v. *Bank of Alma, supra,* we said: "A bank which accepted a draft for collection is liable to the owner thereof for any loss sustained by reason of any default or breach of duty by a subagent to whom it forwarded the draft for collection." Counsel for appellant distinguish this case from *Perry State Bank* v. *Myers, supra,* by saying that in that case the draft was on another bank in the same county with the initial bank, and that, if the latter saw fit to send it to a corresponding bank outside of the county, instead of presenting the check directly, it did so at its own risk. That, we think, was not an important distinction, for the fact that the two banks are situated in the same county does not change the operation of the rule.   If the banks were in the same town where there could be a direct and personal presentation of the check, then there would be a distinction, because, necessarily, the sending of the check to a corresponding bank would be an unnecessary act, and any risk attending it would be assumed by the initial bank.   Where there are two banks in different towns of the same county, the

ARK.]   FARMERS' & MERCHANTS' BANK *v.* RAY.     297

matter of distance is merely one of degree, and, even though the bank is adopting ordinary banking methods in forwarding the check to a correspondent instead of presenting it directly to the paying bank, the selection of the agencies are those of the initial bank, and not of the customer, and the latter is liable for all negligence unless there is a special contract against liability for negligence of the corresponding banks.

But the rule of law thus announced by this court has been expressly changed by a statute which reads as follows:

"Any bank, whether within or without this State, receiving for collection, or for deposit and recharge if not collected or remitted for, any check, note, bill, draft, certificate or other instrument or account, payable in another city or town, whether within or without this State, having exercised reasonable care to select a proper correspondent for the collection of such instrument or account, shall not be liable for the default of such correspondent or of any subcorrespondent selected by the latter, and negligence of any forwarding bank shall not be predicated upon the fact that it may have forwarded such instrument or account directly to the bank on which it is drawn or at or by which it is payable, but the owner of such instrument or account, or the person to whom the same is recharged if not collected or remitted for, shall have a cause of action for and on account of said default against any such correspondent or subcorrespondent itself failing to exercise reasonable care in making said collection." Acts 1921, p. 514, § 14.

The rulings of the court in regard to instructions to the jury were in direct conflict with this statute. It is true that appellant's requested instructions were not in the exact language of the statute, but they came substantially within its terms, and one of the instructions given over appellant's objection told the jury, in so many words, that appellant "is responsible for the conduct of all the other banks employed by it in collecting the check."

The evidence in the case was sufficient to warrant the jury in finding that appellant was not guilty of any negligence in the selection of its correspondents, and that it was not negligent itself in forwarding the check for collection, hence the instructions of the court were erroneous and prejudicial.

It is unnecessary to discuss any other feature of the case, for the error of the court in its charge to the jury calls for a reversal.

Reversed and remanded for a new trial.