### BANK OF HUNTER v. GROS.

#### Opinion delivered October 11, 1926.

1. BANKS AND BANKING—NEGLIGENCE IN COLLECTING DRAFT.—Under Acts 1921, p. 514, § 14, a bank receiving for collection a draft payable in another city is not liable for failure to make such collection where it employed reasonable care in selecting a proper correspondent.

2. BANKS AND BANKING—NEGLIGENCE IN COLLECTING DRAFT.—Where a draft payable in another city was, by mistake of correspondent bank, returned to the collecting bank unprotested and uncollected, and, by the drawer's direction, was again sent for collection and was returned protested, the collecting bank was not shown to be negligent in selecting a correspondent or in forwarding the draft, and was not liable for the amount of the draft.

Appeal from Woodruff Chancery Court, Southern District; *A. L. Hutchins,* Chancellor; reversed.

STATEMENT OF FACTS.

J. B. Gros brought this suit in the circuit court against the Bank of Hunter to recover $2,261.45, alleged to be due him on checking account, and in the sum of $5,000 for damages for the wrongful refusal of said bank to cash his checks when he had sufficient funds on deposit with which to pay the same. The Bank of Hunter became insolvent, and the State Banking Commissioner was substituted as the defendant in the action. Without objection, the case was transferred to equity, and tried there. Before the trial J. B. Gros died, and Loretta O'Keefe Gros was appointed administratrix of his estate. The material facts are as follows:

In January, 1920, J. B. Gros was a rice buyer in the vicinity of Hunter, Arkansas. On the 29th day of January, 1920, J. B. Gros purchased a car of seed rice from Dr. Burns. Gros shipped the car of rice to C. Snoke, Loreauville, Louisiana, and drew a draft on him for $4,754.45 in payment of the car of rice. The draft on Snoke was attached to the bill of lading, and the same was deposited to his credit in the Bank of Hunter. The Bank of Hunter issued to him a deposit slip, showing the amount of the deposit. A check was at once drawn against this account, payable to Dr. Burns, for $4,080.22, which was the purchase price of the rice in question. The Bank of Hunter immediately forwarded the draft to J. B. Gros for collection to its correspondent, the American Bank of Commerce & Trust Company of Little Rock, Arkansas.

About the 1st of March, 1920, the draft, with the bill of lading attached, was returned to the Bank of Hunter by its correspondent. The cashier of the Bank of Hunter communicated with J. B. Gros, and Gros, after looking over the draft and bill of lading, requested the cashier of the Bank of Hunter to return the draft with the bill of lading attached to the bank at Loreauville, Louisiana. The draft was then returned to the Bank of Hunter, duly protested, for the reason that Snoke

refused to receive the car of seed rice, claiming that it was not up to sample. The cashier of the bank at Loreauville, Louisiana, wrote the Bank of Hunter that the draft was returned by it the first time to the correspondent of the Bank of Hunter, because the rice was not received by Snoke on account of not being up to sample.

With the knowledge and consent of J. B. Gros, the car of rice was sold for what it would bring, and the proceeds were credited to an overdraft to the account of J. B. Gros in the Bank of Hunter. J. B. Gros had other transactions with the Bank of Hunter, and drew checks on the bank on the theory that the bank was liable to him for the full amount of his draft on C. Snoke for the car of rice. The bank refused to pay the checks on the theory that it was only responsible to J. B. Gros for the amount which he received for the sale of the car of rice at Loreauville, Louisiana, which was sold with the knowledge and consent of Gros.

The chancellor found the issues in favor of the plaintiff, and rendered a decree against the defendant for $2,939.85. An appeal was duly prosecuted to this court.

Roy D. Campbell, for appellant.

Bogle & Sharp, for appellee.

HART, J., (after stating the facts). The correctness of the decree of the chancellor depends upon the construction to be given to an act of the General Assembly of 1921, amending the original act for the organization and control of banks. General Acts of 1921, page 514. Section 14 of the act is set out in full in Farmers' & Merchants' Bank v. Ray, 170 Ark. 293, 280 S. W. 984, and need not be repeated here.

In this case the court held that, under the section referred to, a bank receiving for collection a check or draft payable in another city or town, and having employed reasonable care to select a proper correspondent, is not liable for the default or negligence of such correspondent in the collection of the check or draft. The evidence in this case was not sufficient to warrant the chancellor in finding that the Bank of Hunter

was guilty of any negligence in the selection of its correspondent, and it did not warrant a finding that there was any negligence on the part of the Bank of Hunter in forwarding the draft for collection.

The undisputed evidence shows that the Bank of Hunter forwarded the draft for collection through its correspondent in Little Rock in the regular course of business, and that the draft was at first returned uncollected without being protested, but that this was not through any default on the part of the Bank of Hunter. It happened simply through a mistake in the Louisiana bank to which the Little Rock correspondent of the Bank of Hunter had forwarded the draft for collection. Immediately on the return of the draft, the Bank of Hunter notified Gros, and, pursuant to his directions, sent the draft to the Louisiana bank for collection. The draft was then returned by the Louisiana bank, duly protested for nonpayment because Snoke refused to receive the car of rice and pay for same, claiming that it was not up to standard.

These facts show that there was no negligence whatever on the part of the Bank of Hunter, and for that reason, under the rule in the case above cited, the Bank of Hunter was not liable to Gros.

It follows that the decree of the chancery court must be reversed, and, inasmuch as the facts appear to have been fully developed, the cause of action will be dismissed.