HICKS COMPANY, LTD., v. FEDERAL RESERVE BANK OF ST. LOUIS.

Opinion delivered June 27, 1927.

1. BANKS AND BANKING—NEGLIGENCE IN FORWARDING CHECKS FOR COLLECTION.—A correspondent bank in forwarding checks sent to it by the owner's depository bank for collection is not negligent in sending the checks to the bank on which they are drawn, under the provisions of Acts 1921, p. 514.

2. BANKS AND BANKING—NEGLIGENCE IN COLLECTING CHECK.—A correspondent bank in forwarding checks sent to it for collection by the depository bank *held* not negligent in accepting from the bank on which the checks were drawn a draft instead of money, where, in so doing, it followed the banking custom, and was without notice of the drawee bank's insolvency.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann*, Judge; affirmed.

*McKay & Smith*, for appellant.

*James G. McConkey, Ashley Cockrill* and *Henry M. Armistead*, for appellee.

MEHAFFY, J. The appellant, plaintiff below, filed the following complaint:

"The plaintiff, for its cause of action against the defendant, alleges:

"First. That the plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Louisiana, and is engaged in the wholesale grocer business in said State, with its principal office in Shreveport, Louisiana, and branch office at Minden, Louisiana.

"Second. The defendant is a banking corporation organized and existing under and by virtue of the laws of the United States, with its principal office in St. Louis, Missouri, and was, at all times hereinafter mentioned, and is now, under and by virtue of the laws of the United States, operating a branch bank, known as the Little Rock Branch Federal Reserve Bank of St. Louis, in Little Rock, Arkansas.

"Third. That on or about the................day of December, 1923, H. T. Dickens of Bussey, Columbia County, Arkansas, was indebted to the plaintiff upon account in the sum of $897.44, and mailed his check, drawn on the Bank of Taylor, of Taylor, Columbia County, Arkansas, for the sum of $897.44, in settlement of said account; that said check was mailed by the said H. T. Dickens at Bussey, Arkansas, to the plaintiff at Minden, Louisiana, and was received and the amount credited to the account of H. T. Dickens by the plaintiff, on or about the...........day of December, 1923.

"Fourth. That on or about the................day of December, 1923, G. W. Brown, of Taylor, Columbia County, Arkansas, was indebted to the plaintiff upon account in the sum of $806.47, and mailed his check, drawn on the Bank of Taylor, of Taylor, Columbia County, Arkansas, for the sum of $806.47, in settlement of said account; that said check was mailed by the said G. W. Brown at Taylor, Arkansas, to the plaintiff at Minden, Louisiana, and was received and the amount credited to the account of G. W. Brown by the plaintiff on or about the................day of December, 1923.

"Fifth. That on or about the................day of December, 1923, as soon as said checks were received by the plaintiff, it deposited said checks in the Bank of Minden, of Minden, Louisiana, for collection; that the First National Bank of Shreveport immediately indorsed and transmitted said checks for collection to the defendant at Little Rock, Arkansas; that, on or about the................day of December, 1923, the defendant transmitted the afore-

said checks, together with other checks, to the Bank of Taylor, Taylor, Arkansas, for collection and return.

"Sixth. That on the................day of December, 1923, the said Bank of Taylor received said checks drawn on it as aforesaid, and stamped said checks 'Paid,' and charged to the accounts of H. T. Dickens and G. W. Brown, the said Dickens and Brown each having more to their credit in the Bank of Taylor than the amount of each of said checks, and on the same day the said Bank of Taylor transmitted to the defendant its draft on the Bankers' Trust Company of Little Rock, Arkansas, for the aggregate amount of the checks, including the two checks sued on herein; that the defendant, immediately upon its receipt, presented said checks to the Bankers' Trust Company of Little Rock, Arkansas, for payment, and payment was refused, the Bank of Taylor having been placed in the hands of the State Bank Commissioner, notice of which had been received by the Bankers' Trust Company; that the plaintiff does not know whether the payment of said checks was refused on account of insufficient funds or whether it was on account of having received notice that said bank had been taken in charge by the State Bank Commissioner. That the defendant thereafter charged the amount of said checks to its immediate correspondent, First National Bank of Shreveport, and the First National Bank of Shreveport immediately charged the amount of said checks back to the Bank of Minden, who in turn charged the amount of said checks back to this plaintiff.

"Seventh. Plaintiff alleges that the defendant was negligent in not requiring the Bank of Taylor to pay the amount of said checks in money and in accepting in payment of said checks a draft drawn on the Bankers' Trust Company of Little Rock, Arkansas, which proved to be worthless; that the plaintiff, by reason of said negligence, suffered damages in the sum of $1,703.91, the amount of said checks.

"Wherefore, premises considered, plaintiff prays judgment against said defendant for its damages afore-

said in the sum of $1,703.91, together with interest, cost, and all other and proper relief.''

Appellee, defendant below, filed demurrer and answer, which are as follows:

''The defendant demurs to the complaint herein because the same does not state a cause of action, and, in no wise waiving said demurrer, but specially reserving and standing upon the same, defendant, by leave of court, answers and says:

''1. Defendant is not liable to the plaintiff because, at the time the checks in question were forwarded by the defendant to the Bank of Taylor, upon which they were drawn by H. T. Dickens and G. W. Brown, the said Bank of Taylor was insolvent.

''2. The defendant denies that it is liable to the plaintiff, and says that it has no contractual relations with the plaintiff; that there is no privity of contract between the plaintiff and defendant, as the defendant received such checks through the Federal Reserve Bank of Dallas, such checks being direct routed to the defendant by the First National Bank of Shreveport by the consent only of the Federal Reserve Bank of Dallas, with directions to defendant to transmit the proceeds of the checks, if collected, to the Federal Reserve Bank of Dallas. Defendant is responsible therefore, if liable at all, which it denies, only to the Federal Reserve Bank of Dallas.

''3. Defendant is not liable in any event, because it was agreed between the First National Bank of Shreveport and the Federal Reserve Bank of Dallas that all checks for collection, such as those involved in this action, might be forwarded to the drawee bank and a bank draft accepted therefor in payment. That the Federal Reserve Bank of Dallas published a notice to this effect to all of its correspondent and member banks, including the First National Bank of Shreveport, which directly assented thereto and was bound by such regulation, and all the customers of the First National Bank of Shreveport, forwarding checks for collection through the Federal Reserve Bank of Dallas, and, by its permis-

sion, direct routing checks to its correspondent banks, were bound by such regulation. That the defendant, on its own part, had given notice to all of its correspondents, including the Federal Reserve Bank of Dallas, that it would forward checks for collection to the drawee bank and accept in payment therefor a bank draft, and that the Federal Reserve Bank of Dallas, the First National Bank of Shreveport, and all banks for whom defendant. undertook to collect checks, assented to and were bound by such notice.

"4. Defendant, saving and reserving all of its defenses heretofore set. up, says that it is not liable to the plaintiff in any event on account of the alleged negligent act complained of, because, after such checks had been forwarded to the Bank of Taylor, and after the Bank of Taylor had remitted to pay the same by a bank draft drawn on the Bankers' Trust Company of Little Rock, and after . such .draft was dishonored by the Bankers' Trust Company of Little Rock because of the insolvency of the Bank of Taylor, and after notice of such fact had come to the knowledge of the plaintiff, the plaintiff elected to hold the Bank of Taylor, and ratified the act of the defendant by filing claim with the State Bank Commissioner against the Bank of Taylor, seeking to collect the proceeds of such check from such drawee bank. The defendant pleads such ratification in bar of the plaintiff's claim hereunder.''

Thereafter the defendant filed the following amendment to its answer:

"The defendant only undertook to collect checks or forward the. same for collection under the lawful conditions set forth by regulations published by the Federal Reserve Board and in force and effect at the time of the transactions complained of, particularly regulation J, series of 1920, and the conditions and terms for the collection of checks set forth in Circular No. 6, series of 1922, dated December 20, 1922, lawfully published by the defendant, and the terms and conditions in Circular No. 19, series of 1923, dated September 24, 1923, lawfully

published by the Federal Reserve Bank of Dallas, all of which regulations, terms and conditions fully bound the plaintiff, and by which it is provided that checks received by the defendant might be forwarded for collection to the drawee bank and an exchange draft accepted therefor and the checks released to the drawee bank, all of which the defendant pleads in defense of the plaintiff's cause of action."

This case was submitted upon an agreed statement of facts and certain evidence. The agreed statement of facts is as follows:

"The following statement is agreed upon as the facts upon which this case may be submitted. (In the event of an appeal by either party, only relevant portions of the publications and circulars attached as exhibits hereto will be carried into the record; such relevant portions will be indicated by underscoring those parts of such documents as are read in evidence by either party at the trial hereof).

"The plaintiff, the Bank of Minden and the First National Bank of Shreveport, are domiciled in the district of the Federal Reserve Bank of Dallas. The First National Bank of Shreveport is a member bank of the Federal Reserve System, Dallas District. The bank of Minden is not a member.

"If forwarded for collection through a Federal Reserve Bank, the checks involved in this action would have been cleared through the Dallas Bank, unless, under regulations published to member and non-member banks, permission had been obtained from the Dallas Bank for direct forwarding through a Federal Reserve Bank of another district, in which latter event the proceeds would be cleared through the Dallas Bank and the collection made under terms and conditions governing the clearance and collection of checks published by the Dallas bank.

"The Bank of Taylor was in the district of the Federal Reserve Bank of St. Louis. The checks involved in this action were sent direct to the Little Rock Branch of the Federal Reserve Bank of St. Louis, by permission

obtained by the First National Bank of Shreveport from the Federal Reserve Bank of Dallas. The Federal Reserve Bank of St. Louis and the Federal Reserve Bank of Dallas had published regulations governing the terms and conditions upon which either of them would collect checks or forward the same for collection. These regulations were known to the First National Bank of Shreveport, and no collection business was accepted by either of the Federal Reserve Banks, or any branch thereof, except subject to the conditions of such regulations. The officers of the Bank of Minden would testify that these regulations were unknown to them.

"A copy of the regulations in force by the St. Louis Bank, designated as circular No. 6, series of 1922, dated December 20, 1922, is attached and made a part of this agreement as Exhibit 1, and a copy of the regulations in force by the Dallas Bank, designated as circular No. 10, series of 1923, dated September 24, 1923, is attached and made a part of this agreement as Exhibit 2. A copy of the regulations adopted by the Federal Reserve Board, series of 1920, is attached and made a part of this agreement as Exhibit 3.

"After the failure of the Bank of Taylor, defendant was authorized by the Federal Reserve Bank of Dallas to file claims with the receiver of the failed bank in behalf of its indorsers, which authorization included the sum claimed by Hicks Company, Ltd. A copy of this authorization, dated February 27, 1924, is attached to this agreement as Exhibit 4. The items of $806.47 and $897.44, representing the checks which had been deposited for collection by the plaintiff with the Bank of Minden and forwarded by that bank to the First National Bank of Shreveport, a member bank of the Dallas Federal Reserve District.

"The First National Bank of Shreveport was authorized by the Bank of Minden to file a claim with the receiver of the failed bank as to the above two items. This was by letter dated February 8, 1924, as shown by

letter of the First National Bank of Shreveport, dated September 17, 1925, attached hereto as Exhibit 5.

"Correspondence between Hicks Company, Ltd., and the defendant occurred as shown by letters dated May 12, 13, and 14, 1924, attached hereto as Exhibits 6, 7, and 8.

"Direct forwarding of checks for collection from banks in the Dallas District to the Federal Reserve Bank of St. Louis was authorized by the Dallas Bank, April 20, 1922, as shown by letters attached hereto as Exhibits 9 and 10.

"A claim on behalf of its indorsers was filed with the receiver of the Bank of Taylor by the defendant, copy of which is attached as Exhibit 11, the claim of Hicks Company, Ltd., being covered by the two items shown on the list attached to the claim in the respective amount of the checks.

"The form of deposit ticket in use by Bank of Taylor and used by Hicks Company, Ltd., in depositing the two checks, is attached hereto as Exhibit 12.

"The Bank of Taylor forwarded a bank draft drawn on its balance at the Bankers' Trust Company, Little Rock, which was not paid because of insufficient funds. The balance of the Bank of Taylor with the Bankers' Trust Company on December 13, 1923, was $1,582.43.

"The defendant has made payments to the plaintiff out of proceeds it received from the Bank Commissioner in the liquidation of the assets of the Bank of Taylor, as follows:

| | |
|---|---:|
| September 3, 1925 | $164.30 |
| September 28, 1925 | $154.41 |
| February 27, 1926 | $154.41 |
| Total | $473.12 |

"The Bank of Taylor was the only bank at Taylor, Arkansas, the nearest other bank being at Stamps, about ten miles distant from Taylor. The last published statement of the Bank of Taylor is exhibited herewith as Exhibit No._____."

Numbers of exhibits were introduced, including circulars, letters and copies of regulations, which we do not think necessary to set out here.

W. A. Hicks testified, in substance, as follows:

"He is vice president of the American Southern Trust Company of Little Rock, which is engaged in general commercial banking business. His bank does business generally all over Arkansas, and a large amount of business over the United States; does a general commercial banking business, the collection of checks, drafts and items of that character. The capital of the bank is one million dollars, and a surplus of two hundred thousand dollars. The average deposit is about sixteen million dollars. Witness has been in the banking business in Little Rock for 15 years. Until its merger with certain other banks, this bank was the largest bank in Arkansas. I am familiar with the universal custom of Federal banks in this Federal Reserve District and in the United States in collecting checks drawn on out-of-town banks. The general custom is to send the checks direct to the paying banks. It is the custom to accept drafts drawn by the drawee bank on their correspondent, which is usually located in the town in which the sending bank is located. It is not the custom to demand currency from the drawee bank for checks being collected.

"Cross-Examination.—This has been the custom since I have been in the banking business. It is not generally the custom to ascertain the financial condition of the bank before sending. If it should be brought to our direct attention that the bank is in an insolvent condition, we would route our items to another bank. We never make any special investigation as to the condition of a bank. We do not make any investigation as to the amount of the capital stock, or the size of the bank. Every State bank is required to publish a statement, and our bank receives these statements. We receive statements from every bank in Arkansas. We make it our special business to get them, to keep in touch with the situation, and to find out whether or not the bank is getting

along all right, if it is doing business with us in a borrow-
ing way. The published statement of the bank does not
indicate its condition as being solvent. A bank may be
over-extended, and may be solvent and in good condition
according to the published statement. It is very hard to
tell from the published statement as to whether the bank
should be considered as being in a shaky condition. The
published statement might indicate that it is in an over-
extended condition,. but not that it was insolvent. If
the bank showed that it had twelve and a half thousand
dollars capital stock, seven and a half thousand surplus,
$2,250 undivided profits, deposits of about $54,000, loans
for more than $130,000, and loans and discounts and bills
payable of $53,000, I would not call it in absolutely first-
class condition, but I would not call it in an insolvent
condition. It depends entirely upon the assets in the way
of bills receivable. If the assets were worth dollar for
dollar just like it stated, and absolutely good, it would
not be insolvent, but if the assets were not worth that
much money, which is usually the case, it would not show
a very good report, but that is a thing that could be deter-
mined only by an intensive examination of its assets. In
1921 and 1922 our bank, known as the German National
Bank, had deposits of $6,900,000, and we were borrowing
seven and one-half million dollars, and our bills receiv-
able were twelve million dollars. We were not insolvent,
but our statement indicated that we were rather in an
over-extended condition. In the year 1923 many banks
in Arkansas were still in an over-extended condition.
We have had less bankruptcies of banks in Arkansas than
in any State surrounding us over a period of five years,
but I am not saying that this over-extended condition
was a very good sign. As I stated before, it depends
on the value of the assets of the bank, and the assets can-
not be determined without an extensive examination by
one who knows the value of their paper. It is possible
that their cash may be low today and collections tomor-
row bring up their resources. It does not indicate
entirely that the bank is insolvent, but indicates that the

bank is trying to take care of its community, and has gotten itself in that condition during hard times, and has not yet been able to recover. When we loan money to country banks we do not require individual indorsement of directors, but we require collateral—that is, the pledging of their bills receivable; in some cases we require individual indorsement.

"Redirect examination.—I examined the published statement stipulated in the agreed statement of facts in this case, and we see nothing in the statement that would keep us from sending items direct to the bank of Taylor for collection.

"Re-cross examination.—There is nothing in the statement to indicate that we would not send items for more than $4,000 direct to the bank. The statement shows that the entire capital stock was taken up in banking house, furniture and fixtures, banking house and other real estate was $12,000, the capital stock $12,500, the surplus $7,500, the undivided profits $2,234, making approximately $10,000 margin in their capital stock, surplus and undivided profits above their furniture and fixtures, banking house and other real estate. It is reasonable to expect, in analyzing a statement of this character, that the banking house, furniture and fixtures are of some value. That would have to be determined, of course, on a sale of the assets. In my way of analyzing this statement I would decrease that 50 per cent., banking house, furniture and fixtures, and other real estate worth approximately $6,000, which, added to the surplus, capital stock and undivided profits, would make a net amount of better than $6,000. We would not hesitate to send items direct to the Bank of Taylor for collection. They did owe the $53,000 and the $130,000. Not knowing the value of the paper, I cannot say whether, subtracting the loan $53,000 and the $130,000 from the loans and discounts, the usual amount of bad paper, whether that would leave the bank insolvent. I will say that this statement indicated that the bank was in very extended condition, but the over-extended condition does not indicate insolvency.

It might be insolvent and it might not—that depends entirely on its assets.''

F. A. Coe testified, in substance, as follows:

''I am manager of the Little Rock Clearing House Association, which is an association of the banks of Little Rock for making settlements on Little Rock checks, and in addition we run a country department for the collection of some out-of-town checks. I have been secretary of this association since August last year. I was with the Little Rock branch of the Federal Reserve Bank of St. Louis since January 1, 1919, until August 1, 1923. I am acquainted with the universal custom of banks handling checks drawn on out-of-town banks for collection. I understand the universal custom to be as stated by Mr. Hicks, whose testimony I have heard.

''Cross-examination.—I was assistant cashier of the Federal Reserve Bank at this place when the items in question were sent to the Bank of Taylor. Mr. A. F. Bailey was in charge. He is not here. It is the universal custom to send checks to these country banks without making investigation of their financial condition. The Bank of Taylor is not a member of the Federal Reserve Bank or the Federal Reserve System. It was the custom of the Federal Reserve Bank to send these items to non-member banks without making any investigation as to their financial standing.

''Redirect-examination.—It is also the custom of the Little Rock Clearing House Association to do the same thing. This is a commercial custom which is the outgrowth of business conditions.''

The above was all the evidence introduced, and the court, after hearing the evidence, found the law and facts in favor of the defendant, and rendered judgment accordingly. The plaintiff saved its exceptions, filed its motion for a new trial, which was by the court overruled, prayed an appeal to the Supreme Court, which was granted.

The appellant's contention is that it has a right to sue the Federal Reserve Bank, and that it is not bound

by the regulations of the Federal Reserve Bank. Appellant alleges that the Federal Reserve Bank was negligent in accepting the draft of the Bank of Taylor, and that because of that negligence it is liable in this case.

The Bank of Taylor, to whom the checks were sent, was the payee bank, and this court had, prior to the act of the General Assembly of 1921, held that it was negligence to send a check for collection to the payee bank. But, after the passage of that act, this court held that that act changed the rule, and, in the decision construing the act of the Legislature, the court said that there are two conflicting lines of decisions, one originating in New York and the other in Massachusetts. Under the first rule a bank was responsible for all of the correspondent banks through whose hands the check passed for collection, unless there was an express contract to the contrary between the customer and the initial bank, and the other rule holding that the correspondent banks were agents of the customer, and the initial bank is not responsible for their negligence.

The act of the Legislature of 1921 is set out in full in the case of *Farmers' and Merchants' Bank* v. *Ray*, 170 Ark. 293, 280 S. W. 984. The court in that case said: "The evidence in this case was sufficient to warrant the jury in finding that appellant was not guilty of any negligence in the selection of its correspondents and that it was not negligent itself in forwarding the check for collection."

The case relied on chiefly by appellant is the case of *Federal Reserve Bank* v. *Malloy*, 264 U. S. 160, 44 S. Ct. 296, 68 L. ed. 617, 31 A. L. R., 1261. That case not only announces the two rules, the New York rule and the Massachusetts rule, but the case annotated, and many authorities are collected. Among other things it announces as one of the reasons for its decision, that the checks were delivered to a bank in Florida for collection, and stated that the relation of the payee to the initial bank of deposit was controlled by the Florida statute, with respect to which it must be presumed they dealt

with each other, and that this statute had the effect of importing the Massachusetts rule into the contract, with the result that the initial bank had implied authority to intrust the collection of the check to a subagent and the subagent in turn to another, and the risk of any default or negligence on their part rested on the owners.

In that case it was urged that the acceptance of the drawee's draft instead of money was justified by custom. And the United States Supreme Court said, with reference to the custom:

"The business of check-collecting is handled by the Federal Reserve Bank in a way very similar to that in which it is handled by collecting banks throughout the country. When one bank receives checks on another in a distant city, it usually sends them to the bank on which they are drawn, or to some other bank in that city, and receives settlement by means of an exchange draft drawn by the bank to which the checks are sent upon some one of its correspondents. When checks are sent with the expectation that the bank receiving them will remit at once, we call it sending for collection and return. When this is done, the bank upon which the checks are drawn is expected to cancel the checks and charge them to the accounts of the drawers, and to remit by means of its exchange draft, or by a shipment of currency. An exchange draft is used more frequently than a shipment of currency."

The court then said, after quoting the above evidence:

"It thus appears that the custom, if otherwise established, does not fix a definite and uniform method of remittance. When checks are sent for collection and return, the bank is expected to cancel the checks and charge them to the account of the drawers, and remit by means of its exchange draft, or by shipment of currency, the former being used more frequently than the latter. Whether the choice of methods is at the election of the drawee bank or the collecting bank does not appear."

The court then stated that the custom was not known to plaintiff, and, all other reasons aside, by its uncertainty and lack of uniformity, it furnishes no definite standard by which the terms of the implied consent sought to be established thereby can be determined. The court, continuing, said:

"It furnishes no rule by which it can be ascertained when an exchange draft shall be remitted and when currency shall be required, or who is to exercise the right of election. A custom to pay 2 pence in lieu of tithes is good; but to pay sometimes 2 pence, and sometimes 3 pence, as the occupier of the land pleases, is bad for uncertainty. * * * A custom to do a thing in either one or the other of two modes, as the person relying upon it may choose, can furnish no basis for an implication that the person sought to be bound by it had in mind one mode rather than the other." *Federal Reserve Bank* v. *Malloy,* 264 U. S. 160, 44 S. Ct. 296, 68 L. ed. 617, 31 A. L. R., 1261.

It will be observed that the testimony in that case showed the custom to be to send either a draft or cash. But the testimony in this case shows that it is the universal custom to send the checks direct to the payee banks, and that it was the custom to accept drafts drawn by the drawee bank on their correspondent, which is usually in the town in which the sending bank is located. It is not the custom to demand currency from the drawee bank for the checks being collected.

The above was the testimony of Mr. W. A. Hicks, vice president of the American Southern Trust Company, and Mr. F. A. Coe testified that he was the manager of the Little Rock Clearing House Association, and acquainted with the universal custom of banks handling checks drawn on out-of-town banks for collection, and he understood the universal custom to be as stated by Mr. Hicks, whose testimony he had heard.

The difference between the case relied on by appellant and the case at bar is, as to custom, that, in the case of *Federal Reserve Bank* v. *Malloy, supra,* the testimony showed the custom was to receive either money or drafts,

one or the other. The testimony in this case shows that the custom was to receive drafts and not money, so there was no uncertainty about it.

It is contended that the appellee was negligent in sending to the payee bank and negligent in receiving a draft instead of money. But the allegation in the complaint is that it was negligent in not requiring the Bank of Taylor to pay the said checks in money, and in accepting in payment a draft drawn on the Bankers' Trust Company. This is the only act of negligence alleged.

As we have already said, the statute itself authorized the appellee to send the check to the Bank of Taylor, and hence this could not be negligence, and the appellant, in its complaint, alleges that the appellee received the checks, transmitted them to the Bank of Taylor, Taylor, Arkansas, and that the Bank of Taylor received the checks, stamped them paid, and charged them to the account of Dickens & Brown, and that on the same day the said Bank of Taylor transmitted to the defendant its draft on the Bankers' Trust Company of Little Rock, and that the defendant, appellee here, immediately presented said checks to the Bankers' Trust Company.

According to the allegations in the complaint and the proof in the case, the appellee was not negligent in forwarding the check for collection, nor was it guilty of any negligence in any other way. And, under the rule announced by this court since the act of 1921, the Federal Reserve Bank, the appellee here, was not negligent. See *Bank of Hunter* v. *Gros,* 171 Ark. 859, 268 S. W. 1032; *Rainwater, Bank Commissioner,* v. *Federal Reserve Bank of St. Louis,* 172 Ark. 631, 290 S. W. 69; *Federal Land Bank of St. Louis* v. *Goodman,* 173 Ark. 489, 292 S. W. 659; *Bank of Keo* v. *Bank of Cabot,* 173 Ark. 1008, 294 S. W. 49.

In the view that we have taken of this case, it is unnecessary to discuss the other questions mentioned in the briefs of counsel. We have reached the conclusion that the appellee was not guilty of any negligence, and the case must therefore be affirmed.